**SOUTHWEST ADVERTISING INC, et al., Plaintiff(s),**

v.

**COUNTY OF CLARK, et al., Defendant(s).**

No. CIV.S–01–509–RLH.

United States District Court, D. Nevada.

May 8, 2002.

Cal Potter, Potter Law Offices, Las Vegas, for Soranno, Richard S., Southwest Advertising, Inc., Plaintiffs.

Michael Foley, Clark County District Attorney's Office, Civil Division, Las Vegas, for Clark, County of, Jenner, Chuck, Defendants.

**ORDER**

HUNT, District Judge.

Before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to Join Indispensable Parties (# 8, filed October 31, 2001). Plaintiffs' Response (# 10) was filed November 16, 2001. Defendants filed their Reply (# 12) on November 30, 2001. Then pursuant to the Court's Order (# 15), Plaintiffs filed a Supplemental Opposition (# 18) on February 14, 2002, and Defendants filed their Supplemental Reply (# 20) on February 26, 2002.

*BACKGROUND*

Plaintiffs seek declaratory and injunctive relief from Defendants refusal to grant "permits" to authorize Plaintiffs' placement and maintenance of news racks on sidewalks abutting Las Vegas Boulevard within the Las Vegas "Gaming Resort District." Although billed as "news" racks, the obvious purpose of the racks is for distribution of advertisements for Plaintiffs' business. They claim that Chapter 16.08 of the Clark County Code requires the issuance of the permits.

Defendants assert that the sidewalks in question are private property and that while they may regulate the public pedestrian use of the sidewalks, they do not regulate news racks on the property. They contend that Plaintiffs are merely trying to force them to interpret their county ordinance in a way that compels issuance of permits for the "news" racks.

Defendants maintain that there are no federal questions involved, despite Plaintiffs' assertions of First Amendment claims, and that the issues have to do with the interpretation of local ordinances, which is a state issue. Thus, this Court does not have jurisdiction to hear this matter.

The ordinance in question is Title 16, Chapter 16.08 of the Clark County Code, which deals with the installation, maintenance, location and issuance of permits upon or over a public right-of-way. The Chapter was amended in November 2001, in part, according to Defendants, to clarify the County's policy with respect to what constitutes a "public right-of-way." As the ordinance now stands, for the regulation of news racks, it requires that the placement of the news racks be on a "public right-of-way" which is defined as an area (sidewalk, street, etc.) which "is owned or maintained by a city, county, state or other governmental body."[1] If the sidewalks in question here are not owned or maintained by a city, county, state or other governmental body, the County takes the position that it does not regulate the placement of news racks and therefore will not issue permits for such, leaving the issue between the property owner and the party wishing to place news racks on the property owner's property. Accordingly, the County has refused to issue a permit to Plaintiffs, advising them that it is not the business of the County whether they place news racks on the sidewalks in question or not.

Defendants contend that what Plaintiffs seek is in reality a Writ of Mandamus. They also contend that Nevada Revised Statute ("NRS") 34.160[2] provides the appropriate remedy when seeking to compel action by a public official or entity. That remedy (and the appropriate jurisdictional forum) is to seek relief in a state court, not the federal court.

## DISCUSSION

Plaintiffs' contend, in their Complaint, First Amended Complaint, and opposing briefs, that the County has violated their civil rights by depriving them of property rights without due process and under color of state law, and has violated their First and Fourteenth Amendments' rights by restraining their freedom of speech and press. They claim that 42 U.S.C. § 1983 provides authority for their action in federal court.

Plaintiffs cite a number of cases which stand for the proposition that § 1983 was enacted to protect people from "unconstitutional action under color of state law." *See, e.g., Monell v. Department of Social Services,* 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Mitchum v. Foster,* 407 U.S. 225, 242, 92 S.Ct. 2151, 32 L.Ed.2d 705. They also cite cases which hold that § 1983 also protects against a state's deprivation of property without due process of law. *See, Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113,

---

1. The ordinance previously described "public right-of-way" as "any place ... dedicated to use by the public for pedestrian and vehicular travel...," but Defendants say that it has always been interpreted to mean only those also owned and maintained by public entities and that the amendment (which was just one of many amendments to the ordinance) merely clarified the language of the ordinance to reflect the prior interpretation.

2. NRS 34.160 provides: The writ may be issued by the supreme court, a district court

or judge of the district court, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station; or to compel admission of a party to the use and enjoyment of a right or office to which he is entitled and from which he is unlawfully precluded by such inferior tribunal corporation, board or person. When issued by a district court or judge of the district court it shall be made returnable before the district court.

31 L.Ed.2d 424 (1972); *Sinaloa Lake Owners Association v. City of Simi Valley*, 882 F.2d 1398 1408–09 (9th Cir.1989). They also acknowledge that property interests are not determined or created by the Constitution, but are the product of "existing rules or understandings that stem from an independent source such a state law." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *See also, Ruckelshaus v. Monsanto Company*, 467 U.S. 986, 1001, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984).

Plaintiffs also cite cases which hold that where a property interest is created by state statutory entitlement, § 1983 is available as "a remedy against ... those who representing a State in some capacity were ... *unwilling* to enforce a state law." *District of Columbia v. Carter*, 409 U.S. 418, 426, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), quoting *Monroe v. Pape*, 365 U.S. 167, 175–76, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (emphasis in original). However, as Plaintiffs also acknowledge, whether § 1983 provides a remedy "turns on whether the statute, by its terms or as interpreted, creates obligations 'sufficiently specific and definite' to be within 'the competence of the judiciary to enforce.'" *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), quoting *Wright v. Roanoke Redevelopment Authority*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). What Plaintiffs fail to realize is that they have not met this test.

The Court will not make specific reference to decisions from other circuits. Suffice it to say that they hold that where there is a protected property interest created, § 1983 provides a remedy for the failure to enforce or protect that right.

This Court has no quarrel with the decisions cited by Plaintiffs. Unfortunately, they do not deal with issues facing this Court. That fact notwithstanding, the Plaintiffs forge ahead, assuming that their property rights have been established, and cite cases which they believe require the issuance of the news rack permits. They boldly assert that the Court need look no further than *Venetian Casino Resort, L.L.C. v. Local Joint Executive Board*, 257 F.3d 937 (9th Cir.2001), and *S.O.C., Inc. v. County of Clark*, 152 F.3d 1136 (9th Cir. 1998), and a district court case out of the Eastern District of Michigan, which is referred to in the *Venetian* decision, *Thomason v. Jernigan*, 770 F.Supp. 1195, 1201–02 (E.D.Mich.1991). Plaintiff's reliance is again misplaced.

The *Venetian* case dealt with an attempt by the Venetian Casino Resort (the reader-and Plaintiffs-should note that it was the property owner, not the County, who brought the action) to preclude union demonstrators from walking on their sidewalk, which had been dedicated to "unobstructed pedestrian access." The sidewalk was for the public to walk on and the Venetian could not preclude people from walking on it, notwithstanding they were demonstrating while they were doing so. *S.O.C., Inc. v. County of Clark* involved canvassers who were distributing leaflets, and it dealt with the County's attempted enforcement of an ordinance, not its refusal to interpret an ordinance in such a way as to give it more enforcement authority. Finally, *Thomason*, involved a city's affirmative action of vacating a public right-of-way to keep people from protests, and the court merely held that the city failed to show the action was content-neutral.

None of these cases dealt with the placing, by one advertiser of a commercial activity, of a *structure* on the property of another. None of these cases dealt with the conflict of claimed property rights between private parties. All of the cases involved an affirmative action which impacted the claimant.

By contrast, the case at bar involves Plaintiffs who complain that the County has *not* asserted its authority over property. It does not involve restrictions on what pedestrians do while walking on public sidewalks. It does involve Plaintiffs' claim that the County should interpret its ordinance differently in order to force the owner of a public sidewalk to permit not just pedestrians to traverse the sidewalk, but to permit Plaintiffs to establish structures (news racks) on another's property so they can advertise, or otherwise further, Plaintiffs' commercial venture. The Supreme Court has held that to do so would constitute a "taking" of property in violation of the Fifth and Fourteenth Amendments. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 421, 427, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (physical occupation of property is a taking regardless of the size of the occupation).

Accordingly, the issue here, in the first instance, is one of property rights. Property rights are not created by the Constitution, but are the result of state law. (See, *supra*, *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); *See also, Ruckelshaus v. Monsanto Company*, 467 U.S. 986, 1001, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), Whether a property right exists is an initial determination by the state. Hence the necessity of NRS 34.160 which requires that writs of mandamus seeking to force action by a governmental agency which impacts property rights should be addressed by the state courts for the determination of property rights.

In *Loretto*, the Supreme Court was dealing with the issue of whether a city ordinance, requiring a landlord to permit installation of cable facilities on rental property, constituted a compensable taking. The decision indicates that the two connector boxes at issue were together no larger than the size of a breadbox, and that the

wires occupied only one-half inch by 30 feet just under the roof line. The Court held that even though the ordinance requiring the cable access had a legitimate public purpose of "rapid development of and maximum penetration by a means of communication which has important educational and community aspects," "a permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve." *Loretto*, 458 U.S. at 424–425, 102 S.Ct. 3164. It further held that "where real estate is actually invaded . . . by having any artificial structure placed on it, . . . it is a taking." *Id.* At 427.

The *Loretto* court then made an analogy which is useful here, quoting from a case of many years standing, *St. Louis v. Western Union Telegraph Co.*, 148 U.S. 92, 98–99, 13 S.Ct. 485, 37 L.Ed. 380 (1893), as follows:

> The use which the [company] makes of the streets is an exclusive and permanent one, and not one temporary, shifting and in common with the general public. The ordinary traveler, whether on foot or in a vehicle, passes to and fro along the streets, and his use and occupation thereof are temporary and shifting. The space he occupies one moment he abandons the next to be occupied by any other traveler . . . . *But the use made by the telegraph company is, in respect to so much of the space as it occupies with its poles, permanent and exclusive.* It as effectually and permanently dispossess the general public as if it had destroyed that amount of ground. Whatever benefit the public may receive in the way of transportation of messages, that space is, so far as respects its actual use for purposes of highway and personal travel, wholly lost to the public. . . .

The *Loretto* court, in footnote, explained that Teleprompter's reliance on labor cases requiring companies to permit access to union organizers was misplaced. FN 1, at 434.

It should be remembered that in this case, contrary to the Plaintiffs' cited cases, does not involve the dedicated use of the property to permit public pedestrian traffic. Rather, this case involves a demand that the County issue a permit and force, against the will of the property owner, structures, in the form of news racks, to be placed on the owner's property. And then, to add insult to injury, Plaintiffs' obvious purpose is to advertise and promote its own commercial ends which is, or may be, contrary to ends of the property owner.

What Plaintiffs seem to forget is that the requirements for governmental action as they demand include the requirements described in the cases they themselves proffer as authority. As noted above, the cases Plaintiff cites states that whether § 1983 provides a remedy "turns on whether the statute, by its terms *or as interpreted, creates obligations 'sufficiently specific and definite' to be within 'the competence of the judiciary to enforce.'*" *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), quoting *Wright v. Roanoke Redevelopment Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (emphasis added). The rights Plaintiffs claim are neither "specific" nor "definite." Furthermore, the statute in question is clearly interpreted by the County to mean that they do not have the authority, right or obligation to issue the requested news rack permits in violation of the property owners rights. The County is not acting under color of law, it is refusing to act under color of law adverse to the property interests of third parties. It literally washes its hands of the matter, saying that whether Plaintiffs install news racks is of no concern to it and that it will not preclude or punish Plaintiffs for the installation of the racks. If Plaintiffs want to install news racks on privately (though publicly dedicated) owned sidewalks, they must address the property rights of those third-party owners.

Moreover, the Nevada Supreme Court, the ultimate arbiter of the existence of property rights has definitively spoken on the issue contrary to Plaintiffs' claims. Just last year, the Nevada Supreme Court addressed the rights of a private property owner to enjoin distribution of commercial handbills on sidewalks on an owner's property. It held that "owners of private property may exclude commercial handbillers and such exclusion is not a violation of the Nevada or United States Constitutions." *S.O.C., Inc. v. The Mirage Casino–Hotel,* 23 P.3d 243, 245 (Nev.2001). The Nevada Supreme Court further explained that "an easement obtained by a governmental entity for a public use is only as broad as necessary for the accomplishment of the public purpose for which the easement was obtained ...." *Id.* at 247. And finally, "We conclude that the easement, by its express language, is limited to pedestrian uses of the sidewalk to travel from point A to point B. The language of the easement does not contemplate use by commercial businesses seeking to advance their own economic gains." *Id.*

The foregoing is a "specifically sufficient" and "definite" definition of property rights and obligations, established by the state, regarding the rights of property owners who own sidewalks which have been dedicated for public pedestrian use. The Nevada Court said that "privately-owned property does not lose its private nature because the public traverses upon it" and owning and maintaining privately owned, but publicly used, sidewalks do not mean that the owner is performing a public function. *Id.*

■ Section 1983 provides authority for a party to seek relief in federal court from violations of established property rights. For § 1983 to invoked, Plaintiffs must have established property rights. Plaintiffs have failed to establish that they possess the property rights they claim. Accordingly, this Court lacks jurisdiction to consider Plaintiffs' claims regarding that issue. The existence and nature of property rights is a state issue.

In addition, Plaintiff has failed to establish the existence of, much less the violation of, under color of law, a First Amendment right to place news racks on the private property of another which is dedicated for public pedestrian use.

First, the County has not acted under color of law, as that term is used. Rather, it has refused to act on the grounds that it does not have the authority or desire to issue permits for news racks on the sidewalks at issue, citing the property rights of the owner of the sidewalk property as the basis for its declining to exercise authority to do so.

Further, the owners in question have not been named parties to this litigation, and, even had they been, there is no evidence that they acted under color of law, or, for that matter, that they have acted at all.

The authorities cited by Plaintiffs merely go to the First Amendment rights of pedestrians to demonstrate or to the fact that a governmental attempt to curtail dispensing handbills (by pedestrians) was too broad and unenforceable. They do not address a First Amendment right to force a governmental entity to authorize the placement of news racks on private property.

Furthermore, the Nevada Supreme Court has declared that private owners may withhold permission from commercial businesses seeking to advance their own economic gains without impacting First Amendment rights. Certainly the County is not remiss in refusing to issue permits where it feels it has no authority to do so, in view of the Nevada Supreme Court's declaration that it does not have the right to do so.

Even the *Venetian Casino Resort* case noted that the general rule is that private property is not subject to the First Amendment, and that the pedestrian activity in that case falls within a very limited exception to that general rule. *Venetian Casino Resort,* 257 F.3d at 952.

Two of the members of the Nevada Supreme Court would give commercial speech a more limited protection than the decision does. Maupin and Shearing Concurrence, 23 P.3d at 252.

■ Accordingly, Plaintiff has not demonstrated a First Amendment right to place "new" racks on privately owned sidewalks dedicated for public use. Therefore, Plaintiff has not presented First Amendment rights which can be protected by § 1983, and this Court must conclude that it also does not have jurisdiction in Plaintiffs' remaining claims.

Plaintiffs, in effect, request this Court to mandate a different interpretation of a county ordinance by Clark County, and then enforcement of Plaintiffs' interpretation of the ordinance. This is not a federal question. Recourse lies exclusively, in these circumstances and on this set of facts, with state law and the state courts.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to Join Indispensable Parties (# 8) is GRANTED.